UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-60312-CR-SMITH/VALLE

UNITED STATES OF AMERICA

vs.

WILMER ALONZO STANLEY, JR.,

    Defendant.
_____/

## FACTUAL PROFFER

The United States of America, WILMER ALONZO STANLEY, JR. ("Defendant"), and the Defendant's counsel, agree that, had this case gone to trial, the United States would have proven the following facts beyond a reasonable doubt, and that such facts are sufficient to establish the Defendant's guilt as to the offense charged in the Indictment.

In or around June 2019, law enforcement began physical surveillance of the residence at 438 NW 7th Avenue, Pompano Beach, FL, in Broward County, in the Southern District of Florida, on suspicion of narcotics trafficking. Law enforcement observed activity indicative of street-level narcotics trafficking occurring at the residence.

On or about June 26, 2019, law enforcement executed a controlled purchase of crack cocaine using an undercover police officer and a Confidential Informant ("CI"). As part of the controlled buy, law enforcement provided the CI currency for the purchase. The undercover police officer drove the CI to the target residence. Upon arrival, the CI walked up to the front door and began speaking to an unknown black male in the residence through one of the windows. The CI requested "hard," which is street slang for crack. The unknown black male then exited the

residence and approached the CI. The undercover police officer visually identified the black male as the Defendant. The Defendant and the CI executed a hand-to-hand narcotics sale.

Immediately after the transaction, the Defendant returned to the residence, and the CI returned to the vehicle with the undercover police officer. The CI relinquished two pieces of crack cocaine, an amount consistent with the funds provided to the CI. The CI and the undercover police officer then traveled to a prearranged location. The undercover police officer relinquished the two pieces of crack cocaine to another law enforcement officer, who field-tested the narcotics and confirmed cocaine. Law enforcement submitted the substance for testing, and the laboratory confirmed 0.25 grams of a substance or mixture containing a detectable amount of cocaine.

Between June and July 2019, law enforcement periodically surveilled the residence and routinely observed the Defendant at the residence. On or about July 17, 2019, law enforcement executed a state search warrant at the residence. Inside the residence, law enforcement found M.O. in the north bedroom, which had a small hole cut into the window from where narcotics could be provided to prospective purchasers standing outside. In the north bedroom, law enforcement also found a ledger indicating sales of 3,4-Methylenedioxyamphetamine ("MDMA"), and three radios for communication.

In the east bedroom, where the Defendant later admitted, post-*Miranda*, that he resided, law enforcement found an AK-47 (Serial # PM0145) with approximately 30 rounds of 7.62 ammunition loaded, and a Taurus P-111 (Serial # TXH06783) with approximately 13 rounds of 9mm ammunition loaded. Law enforcement also found a 9mm extended magazine inside the dresser drawer, along with clear/pink capsules where narcotics are stored. In a shoebox, law enforcement found the Defendant's personal effects. In the kitchen, law enforcement found, among other things, four scales.

2

In or around late July 2019, law enforcement resumed physical surveillance of the residence on suspicion of narcotics trafficking. Law enforcement once again observed activity indicative of street-level narcotics trafficking.

On or about July 30, 2019, law enforcement executed a controlled purchase for MDMA using an undercover police officer and a Confidential Informant ("CI"). The undercover police officer provided the CI currency for the purchase and drove the CI to the target residence. Upon arrival, the CI walked up to the north window and began speaking to an unknown individual in the residence through the north window—the one with the hole cutout. The CI requested $20's worth of MDMA. The individual and the CI conducted a hand-to-hand transaction. The CI then returned to the car, where the CI relinquished the two pieces of suspected MDMA, an amount consistent with the money provided to the CI. Law enforcement submitted the substance for testing, and the laboratory confirmed 0.26 grams of a substance or mixture containing a detectable amount of 3,4-Methylenedioxy-alpha-ethylaminobutyrophenone ("Eutylone").

Law enforcement continued physical surveillance of the residence following the controlled purchase. Law enforcement observed the Defendant routinely at the residence for extended periods of time. Law enforcement observed activity at the north window indicative of street-level narcotics trafficking.

On or about August 13, 2019, law enforcement executed a state search warrant at the residence. Inside, law enforcement found the Defendant and two other individuals. Law enforcement's search of the north bedroom revealed, among other things, 37 small, red capsules containing a powder that a laboratory test later confirmed contained about 1.51 grams of a substance or mixture containing a detectable amount of N-Phenyl-N-[1-(2-phenylethyl)-4-

piperidinyl]propanamide ("Fentanyl"). In the north bedroom, law enforcement also found a narcotics ledger. The Defendant's palm print was found on the ledger.

In the kitchen, law enforcement found items indicating that the Defendant had previously been there, including a Broward Sheriff's Office case card listing the Defendant as the victim and a photograph of the Defendant's child. Law enforcement also found small, red capsules matching the capsules found in the north bedroom.

In the Defendant's bedroom—the east bedroom—law enforcement found a lease agreement for the residence. Outside the house, law enforcement found small, red capsules matching the ones found inside, a digital scale, and small, plastic baggies commonly used for narcotics trafficking.

Following the execution of the search warrant, law enforcement interviewed R.D., who stated, post-*Miranda*, that "Fat Cat"—a known nickname of the Defendant—had hired him as a "worker" to sit in the north bedroom (with the altered window) and sell red capsules containing heroin. R.D. did not know the Defendant's real name, but he described him as having an AK-47 tattooed on his forehead as well as a set of lips tattooed on the cheek. The Defendant matches that description.

R.D. further explained that the Defendant would pay him $1.00 for every capsule sold, and that the Defendant had given him about 47 capsules to start his shift. He also explained that the Defendant had hired other workers as well, including someone who went by the nickname "NY." M.O., who was found at the residence during the first search warrant, goes by the nickname "NY." R.D. stated that the Defendant was the only person in charge.

From at least as early as in or around June 2019, and continuing through on or about August 13, 2019, the Defendant conspired with R.D., among others, to sell narcotics from the residence. The two firearms retrieved from the Defendant's bedroom in the residence were possessed by the Defendant in furtherance of that conspiracy.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: 2/14/2020    By: _____
                        DAYRON SILVERIO
                        ASSISTANT UNITED STATES ATTORNEY

Date: 2/14/2020    By: _____
                        TIMOTHY DAY
                        COUNSEL FOR DEFENDANT

Date: 2/14/2020    By: _____
                        WILMER ALONZO STANLEY, JR.
                        DEFENDANT